1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TONY LEE COMBS, | |
| Plaintiff, | CASE NO. 3:23-cv-05727-JLR-GJL |
| v. | REPORT AND RECOMMENDATION |
| ERIC B. SMITH, *et al.*, | Noting Date: October 2, 2024 |
| Defendants. | |

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge Grady J. Leupold. Presently pending before the Court is Defendants Smith, Evans, and Whipple's Motion for Summary Judgment. Dkt. 20. Plaintiff Tony Lee Combs, proceeding *pro se* and *in forma pauperis* (*see* Dkt. 4), alleges Defendants, three correctional officers at the Stafford Creek Corrections Center ("SCCC"), used excessive force against him in violation of his constitutional rights. *See* Dkt. 5. After reviewing the relevant record, the Court concludes Plaintiff has failed to administratively exhaust his claim against Defendant Officer Whipple before bringing this action in federal court, and has failed to state a claim of excessive use of force against Defendants Sergeant Smith and Officer Evans.

Accordingly, the Court recommends Defendants' Motion for Summary Judgment (Dkt. 20) be **GRANTED** and summary judgment be **ENTERED** in favor of all Defendants.

## I.    BACKGROUND

**A.    Factual Background**

The Court begins by summarizing the facts of this case from the parties' pleadings, summary judgment briefing, and the evidence submitted in support thereof. The facts are undisputed except as noted.

Plaintiff arrived at SCCC in July 2021, during the COVID pandemic. Dkt. 23, S. Brown Dec., ¶ 6. At that time, the Department of Corrections ("DOC") had in place a mandatory mask mandate requiring all persons within DOC facilities to wear a face mask that covered the person's nose and mouth. *Id*.

On August 13, 2021, while housed at SCCC, Plaintiff was speaking on a telephone just before 8:00 p.m. Dkt. 5 at 4–5; Dkt. 25, C. Evans Dec., ¶ 7; *see also* Dkt. 35[1], Camera 122 Video at 1:07. While doing so, he was seated in the dayroom of A-Pod on a stool within a bank of stools that inmates typically used for the "J-Pay" telephones. *Id.* Defendant Officer Evans was walking by when he noticed Plaintiff was not wearing his face mask correctly, so he stopped and instructed Plaintiff to cover his nose and mouth with the mask. Dkt. 25 ¶ 7. Plaintiff responded that he was on the phone and unwilling to properly use his mask. *Id*. Defendant Officer Evans repeated the instruction, but Plaintiff still did not comply. *Id*. Defendant Officer Evans then stated, "[p]ut your mask on and I will walk away." *Id*. Defendant Officer Evans heard Plaintiff use profanity, and then he stood up and walked to Defendant Officer Evans and said, "[w]hat's

---

[1] Docket Entry 35 memorializes Defendants' manual filing of a single USB exhibit. Stored on that exhibit are three video files of security camera footage in or around the time of the August 13, 2021, incident. Hereinafter, the video files will be referred to as "Camera 122 Video," "Camera 123 Video," and "Camera 127 Video." The footage from all three cameras contains no audio.

up?" *Id.* Defendant Officer Evans took a step back and instructed Plaintiff to follow him to the Sergeant's office down the hall to address his behavior. *Id.*; Dkt. 5 at 4–5, 7–8, 15–16, 18; *see also* Camera 122 Video at 1:26–1:58; Camera 123 Video at 21:22–30. Plaintiff returned to the phone to hang up before following Defendant Officer Evans, with his mask still under his chin. Dkt. 25 ¶ 7; *see also* Camera Video 122 at 1:55–2:04; Camera 123 Video at 21:22–30. Defendant Officer Whipple followed behind Plaintiff. Dkt. 25 ¶ 7; *see also* Camera 122 Video at 2:18–2:26; Camera 123 Video at 21:47–52.

When they reached the Sergeant's office, Defendant Officer Evans rapped on the window, opened the door, and asked Plaintiff to enter the office before him. Dkt. 5 at 5; Dkt. 25 ¶ 8; *see also* Camera 127 Video 1:05–12. Plaintiff stepped inside, with Defendant Officer Evans following behind. Dkt. 25 ¶ 8; *see also* Camera 127 Video 1:05–12. Defendant Officer Whipple entered the office also, but remained just inside the doorway. Dkt. 5 at 5; Dkt. 25 ¶ 8; *see also* Camera 127 Video 1:30–32.

Once inside the office,[2] Defendant Sergeant Smith asked Plaintiff to sit down in the chair across from his desk, but Plaintiff refused and remained standing. Dkt. 25 ¶ 8. Defendant Officer Evans told Defendant Sergeant Smith that Plaintiff acted aggressively towards him when he instructed Plaintiff to pull up his face mask. *Id.* Plaintiff denied being aggressive towards Defendant Officer Evans. *Id.*

Defendant Sergeant Smith pulled up the security video and they all watched it. Dkt. 25 ¶ 9; Dkt. 23-11 at 4, Ex. F, Plaintiff's Complaint No. 21737463. Plaintiff alleges Defendant Sergeant Smith then told Defendant Officer Evans that if he felt threatened he could accuse Plaintiff of committing an infraction and Defendant Sergeant Smith would address the issue at a

---

[2] There is no video footage submitted of the inside of Defendant Sergeant Smith's office.

subsequent hearing. Dkt. 23-11 at 4. In response, Defendant Officer Evans demanded that

Plaintiff be sent to the "hole," the Administrative Segregation Unit (Ad-Seg), for his behavior.

*Id*. Plaintiff responded that he had done nothing to be sent to the "hole." *Id*. Plaintiff then put

down the tablet and cup he was holding onto the Sergeant's desk, leaned across the desk and

loudly asked Defendant Sergeant Smith to rewatch the security video. Dkt. 25 ¶ 9; Dkt. 23-11 at

4–5. Defendant Sergeant Smith refused, upsetting Plaintiff. Dkt. 25 ¶ 9. According to Plaintiff,

Defendant Sergeant Smith then stood up and spoke to him in obscenities as he walked around the

desk, causing Plaintiff to feel nervous. Dkt. 23-11 at 5. Defendants counter that Defendant

Sergeant Smith asked Plaintiff to calm down, and when he refused to do so, the Sergeant radioed

for assistance with an out-of-control inmate. Dkt. 25 ¶ 9. He asked Plaintiff again to calm down

and to face the wall to be handcuffed. *Id*.

Instead of complying, Plaintiff, who was still visibly upset, turned towards the door and

towards Defendant Officer Whipple who was still standing just inside of the doorway. *Id*. ¶ 10.

Defendants Officer Evans and Sergeant Smith commanded Plaintiff multiple times to stop

moving towards Officer Whipple and allow himself to "get cuffed up," but Plaintiff refused to

comply. *Id*. Defendant Sergeant Smith, who at this point had come around his desk, tried to stop

Plaintiff by using a right arm and shoulder restraint maneuver. Dkt. 25 ¶ 10. Defendant Sergeant

Smith missed Plaintiff's elbow and his hand landed on Plaintiff's body, instead pulling Plaintiff

from behind into a bear hug around his torso. Dkt. 25 ¶ 10; Dkt. 28, C. Whipple Dec., ¶ 7.

At the same time, Plaintiff grabbed the door handle with one hand and Defendant Officer

Whipple tried to pry Plaintiff's hand from the handle. Dkt. 28 ¶ 7. Plaintiff alleges that while he

was holding onto the handle, Defendant Sergeant Smith struck him three times on the back of the

head. Dkt. 23-11 at 5. Defendant Sergeant Smith counters that, during this time, with his free

1   hand, Plaintiff grabbed and squeezed Smith's testicles, causing him to yell out, "[l]et go of my

2   nuts!" Dkt. 25 ¶ 11; *see also* Dkt. 23-1 at 2, Ex. A-1, Incident Report. When Plaintiff refused to

3   comply, Defendant Sergeant Smith administered three palm strikes to Plaintiff's right trapezius

4   muscles and again tried to restrain him. Dkt. 23-1 at 2.

5       Defendant Officer Evans heard Smith yell out and, concerned for his safety and fearing

6   Plaintiff was injuring Smith, radioed in that he was engaging in a spontaneous use of force. Dkt.

7   25 ¶ 3. Defendant Officer Evans pulled out his oleoresin capsicum spray (OC spray or pepper

8   spray) and sprayed it towards Plaintiff.[3] *Id*. The struggle, however, continued. *Id*. As the officers

9   all attempted to gain physical control of Plaintiff, they spilled out of the office and into the foyer.

10  *Id*. Defendant Sergeant Smith recounted that, in an attempt to subdue Plaintiff, Smith "took

11  control of his chin with [Smith's] right forearm in self-defense." Dkt. 23-1 at 2.

12      Response and Movement Officers then arrived on the scene to assist. Dkt. 25 ¶ 12.

13  Defendant Sergeant Smith continued trying to restrain Plaintiff while Defendant Officer Evans

14  initiated a "leg trip" maneuver. *Id*. Both Defendant Sergeant Smith and Plaintiff fell to the

15  ground, with Plaintiff on top of Smith. *Id*. Defendant Sergeant Smith yelled out in great pain. *Id*.

16  Another officer pulled him out from under Plaintiff and took him to a nearby office. *Id*. Upon

17  examination, it was discovered that Defendant Sergeant Smith's left hip had been broken. Dkt.

18  23-1 at 2.

19      Subsequently, the Response and Movement Officers were able to subdue Plaintiff. *See*

20  Dkt. 26, T. Marshall Dec., ¶ 5; Dkt. 27, C. Springer Dec., ¶ 5; Dkt. 28, C. Whipple Dec., ¶ 8.

21  Because Plaintiff had been flailing his arms and kicking his legs, Officer Marshall used a cross

22

23  [3] SCCC's Legal Liaison Officer submitted a Declaration with attachments containing three photographs showing
    where the OC spray utilized by Defendant Officer Evans landed on the inside of Defendant Sergeant Smith's office

24  door. *See* Dkts. 23-5, 23-6, 23-7.

leg technique to control Plaintiff's body. Dkt. 26 ¶ 5. And Officer Springer used a gooseneck

hold technique to gain control of Plaintiff's wrists in order to apply wrist restraints. Dkt. 27 ¶ 5.

Once restrained, Plaintiff was taken to Ad-Seg. Dkt. 23-1 at 2. A Licensed Practical Nurse (LPN)

physically examined Plaintiff there and cleared him for entry into the Unit. Dkt. 23-8 at 3, Ex. D,

Nursing Assessment of Patient Placed in Restrictive Housing. The LPN noted Plaintiff "has a

quarter bump on the right side of his head. No bleeding noted. No other injuries note[d]. Resp

even and unlabored. Pt refused to open his eyes. He stated he was sprayed with OC. No acute

distress noted at this time." *Id*. at 2. The LPN recommended daily wellness checks at Plaintiff's

cell and vitals as needed. *Id*. at 2–3. There is nothing in the record showing Plaintiff sought

follow-up treatment.

In addition to the differences noted above, Plaintiff's account of these events also varies

as follows. According to Plaintiff, after Defendant Sergeant Smith asked that he face the wall to

"cuff up," Plaintiff instead turned to face the door and Defendant Officer Evans struck him with

the OC spray. Dkt. 23-11 at 5. Plaintiff then grabbed the door handle with both hands while

Sergeant Smith struck him hard on the head three times. *Id*. Plaintiff then opened the door to the

office and Sergeant Smith started choking Plaintiff from behind. *Id*. Plaintiff screamed out, "I

can't breath[e]," and the Sergeant let go of him, causing him to fall to the floor. *Id*. Plaintiff then

placed his hands behind his back and he was escorted to Ad-Seg. *Id*.

After the incident, Plaintiff filed Grievance/Complaint No. 21737463, against Defendants

Officer Evans and Sergeant Smith. Dkt. 23-11, Ex. F. Upon review, the SCCC Grievance

Coordinator notified Plaintiff that the Complaint was being removed from the Resolution

Program in order for it to be handled by the use of force review team under a different review

1    program. *See* Dkt. 23-12 at 2, Ex. G, Complaint No. 21737463. Plaintiff did not file a grievance

2    against Defendant Officer Whipple. *See* Dkt. 23 ¶ 17.

3    **B.     Procedural Background**

4          Plaintiff filed a verified Complaint on August 22, 2023.[4] Dkt. 5. After Defendants filed

5    their Answer on October 20, 2023 (*see* Dkt. 13), the parties engaged in discovery. *See* Dkt. 22,

6    M. Hansen Dec. On January 16, 2024, Defendants filed a Notice of Defendant Sergeant Smith's

7    death, as amended on April 24, 2024. Dkts. 16, 19.

8          After the discovery period concluded, Defendants filed the instant Motion for Summary

9    Judgment, with supporting evidence, on June 24, 2024. Dkts. 20–28; 30–31. To date, Plaintiff

10   has not filed a response to the Motion. *See* Dkt. Defendants filed a Reply on July 22, 2024,

11   confirming that they timely served Plaintiff with their Motion and supporting documents by

12   email in accordance with the parties' E-Service Agreement and by U.S. Mail.[5] *See* Dkt. 32 at 3.

13                              **II.     STANDARD OF REVIEW**

14         Summary judgment is appropriate if a moving party shows that "there is no genuine

15   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

16   Civ. P. 56(a). The materiality of a given fact is determined by the required elements of the

17   substantive law under which the claims are brought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

18

19

20   ---
     [4] While Plaintiff's Complaint sets forth ten "counts," these "counts," other than the three counts alleging an
     excessive use of force against the three Defendants (Dkt. 5 at 4–8), describe matters such as Jurisdiction (Count I,

21   Dkt. 5 at 12), Venue (Count II, Dkt. 5 at 13), Plaintiff (Count III, Dkt. 5 at 13–14), Defendants (Count IV, Dkt. 5 at
     14), Exhaustion of Administrative Remedies (Count V, Dkt. 5 at 15), Facts (Counts VI, VII, VIII, IX, Dkt. 5 at 15–

22   21), and Prayer for Relief (Count X, Dkt. 5 at 21).

     [5] On August 20, 2024, the Court directed Defendants to produce a flash drive containing the video surveillance

23   referenced in the Complaint. *See* Dkt. 34. Defendants produced the flash drive on September 3, 2024, *see supra* note
     1, at 2, and in an accompanying Notice, informed the Court that they attempted to confer with Plaintiff regarding the

24   submission, but were unsuccessful. *See* Dkt. 36.

1    242, 248 (1986). Only factual disputes that affect the outcome of the suit under the governing

2    law will be considered. *Id.*

3        Where there is a complete failure of proof concerning an essential element of the non-

4    moving party's case on which the nonmoving party has the burden of proof, all other facts are

5    rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*

6    *Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the

7    evidence presented through the prism of the substantive evidentiary burden"). However, when

8    presented with a motion for summary judgment, the Court shall review the pleadings and

9    evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation

10    omitted), and "a *pro se* complaint will be liberally construed." *Pena v. Gardner,* 976 F.2d 469,

11    471 (9th Cir. 1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted).

12        Once the moving party has carried its burden under Rule 56, the party opposing the

13    motion must do more than simply show that there is some metaphysical doubt as to the material

14    facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The opposing party

15    cannot rest solely on his pleadings but must produce significant, probative evidence in the form

16    of affidavits, and/or admissible discovery material that would allow a reasonable jury to find in

17    his favor. *Id.* at n. 11; *Anderson*, 477 U.S. at 249–50. However, weighing of evidence and

18    drawing legitimate inferences from facts are jury functions, and not the function of the Court.

19    *See United Steel Workers of Am. v. Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

20    And if the moving party has not met its burden on summary judgment, the Court will not grant

21    the motion—even if there is no opposition to the motion. *See Henry v. Gill Inds.*, 983 F.2d 943,

22    950 (9th Cir. 1993) ("Summary judgment may be resisted and must be denied on no other

23

24

1  grounds than that the movant has failed to meet its burden of demonstrating the absence of

2  triable issues.").

3      Here, because Plaintiff is *pro se*, in ruling on the Motion for Summary Judgment, the

4  Court will consider all of Plaintiff's factual contentions offered in verified pleadings, where such

5  facts are based on personal knowledge and would otherwise be admissible in evidence, and

6  where Plaintiff attested under penalty of perjury that the contents of the verified pleadings are

7  true and correct. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

8                          **III.    DISCUSSION**

9      In their Motion, Defendants argue they are entitled to summary judgment on the bases

10  that: (1) Plaintiff failed to exhaust the administrative remedies available to him at SCCC before

11  filing suit as to Defendant Officer Whipple, (2) Plaintiff has failed to state a § 1983 claim of

12  excessive use of force by Defendants Sergeant Smith and Officer Evans;[6] and (3) Defendants are

13  entitled to dismissal of the claims against them pursuant to qualified immunity. Dkt. 20 at 10–19.

14  The Court will consider these arguments in turn.

15  **A.    Failure to Exhaust Administrative Remedies – Defendant Officer Whipple**

16      Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, he must first

17  exhaust all available administrative remedies. Under the Prison Litigation Reform Act of 1995

18  ("PLRA"):

19      No action shall be brought with respect to prison conditions under section 1983 of
        this title, or any other Federal law, by a prisoner confined in any jail, prison, or
20      other correctional facility until such administrative remedies as are available *are*
        *exhausted*.

21

22  [6] Within their argument that Plaintiff has failed to state a claim of excessive use of force, Defendants make four (4)
    distinct sub-arguments: (1) the alleged use of obscenities by Defendant Sergeant Smith is not actionable under §
23  1983, (2) the lack of injury to Plaintiff demonstrates Defendant Sergeant Smith used techniques with just enough
    force to prevent harm to Plaintiff, Defendant Sergeant Smith, or other officers, (3) Defendant Officer Whipple
    caused no injury to Plaintiff during the incident at issue, and (4) Defendant Officer Evans caused no injury to
24  Plaintiff during the incident at issue. Dkt. 20 at 15–17.

42 U.S.C. § 1997e(a)(emphasis added). Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The mere fact a plaintiff has filed an initial grievance under a prison's grievance policy does not satisfy the PLRA exhaustion requirement; a plaintiff must exhaust all levels of an available grievance procedure before he can initiate litigation. *See id.* at 736–41; *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). Even when the prisoner seeks relief not available in grievance proceedings, such as money damages, exhaustion is still a prerequisite to suit. *Booth*, 532 U.S. at 741. If a claim is not exhausted, it must be dismissed. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

      Failure to exhaust administrative remedies is properly brought as a summary judgment motion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Once the defendant proves (1) there was an available administrative remedy and (2) the plaintiff failed to exhaust the available remedy, the burden shifts to the plaintiff. To avoid dismissal, the plaintiff must then show there was something about his particular claim that made the "existing and generally available administrative remedies effectively unavailable to him." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Hilao v. Est. of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

      1.   Defendants' Evidence

      Defendants have provided evidence that the DOC has a grievance process which permits those in its custody to file administrative grievances pertaining to various routine matters, including conditions of confinement, staff conduct, or retaliatory conduct. Dkt. 23 ¶ 11. The grievance procedure consists of four levels of review. *Id.* ¶ 12. All grievances are initially filed at Level 0. *Id.* At Level 0, the facility's "grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, additional information, or accepts the complaint and processes it as a formal grievance." *Id.* From Level 0 through Level II, if a prisoner does not

1  agree with a response to his grievance, he may submit an appeal. *Id*. A Level III response to a

2  grievance is final and cannot be appealed. *Id*.

3       If the prisoner's complaint involves a use of force situation, the DOC reviews the matter

4  through a different review program. *See id*. ¶ 8. After each incident within a prison involving any

5  use of force by a prison official, all custodial personnel involved in the incident must file an

6  incident report. *Id*. Those who used force in the incident must also file a use of force report. *Id*.

7       Here, Defendants present undisputed evidence that Plaintiff utilized the grievance only

8  against Defendants Officer Evans and Sergeant Smith but not Defendant Officer Whipple. *See*

9  Dkt. 23-11, Ex. F. On August 14, 2021, August 20, 2021, and August 22, 2021, Plaintiff filed

10  grievances against Defendant Officer Evans for the August 13, 2021, incident. *Id*. Plaintiff

11  complained that Defendant Officer Evans should have followed Sergeant Smith's instructions to

12  write up an infraction against Plaintiff rather than demand he be sent to Ad-Seg. *Id*. at 2. He also

13  filed a grievance against Defendant Sergeant Smith, naming him as "H-3 Unit Sgt at night on

14  8/13/21." *Id*. at 3. Plaintiff complained that Defendant Sergeant Smith yelled obscenities at him

15  and hit him in the back of the head three times with closed fists. *Id*. at 5.

16       After reviewing the grievances, all filed under Complaint No. 21737463, the SCCC

17  Grievance Coordinator notified Plaintiff that because his Complaint involved the use of force by

18  a prison official, it was being forwarded to and handled by the use of force review team under a

19  different review program. Dkt. 23-2 at 2.

20       However, it remains undisputed that Plaintiff did not file a grievance against Defendant

21  Officer Whipple. *See* Dkt. 23 ¶ 17.

22  //

23

24

1

2.    <u>Plaintiff's Response</u>

2

The burden now shifts to Plaintiff, "who must show that there is something particular in his

3

case that made the existing and generally available remedies effectively unavailable to him by

4

'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or

5

obviously futile.'" *Williams*, 775 F.3d at 119 (quoting *Albino*, 747 F.3d at 1172). Acts by prison

6

officials preventing the exhaustion of administrative remedies may make administrative remedies

7

effectively unavailable. *See Nunez v. Duncan*, 591 F.3d 1217, 1224–25 (9th Cir. 2010). "The

8

ultimate burden of proof, however, remains with the defendants," and the evidence must be viewed

9

in the light most favorable to the plaintiff. *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at

10

1172). The Supreme Court held there are three circumstances in which an administrative remedy is

11

not capable of potential relief:

12

> First, . . . an administrative procedure is unavailable when . . . it operates as a simple
> dead end—with officers unable or consistently unwilling to provide any relief to

13

> aggrieved inmates. . . . Next, an administrative scheme might be so opaque that it
> becomes, practically speaking, incapable of use. In this situation, some mechanism

14

> exists to provide relief, but no ordinary prisoner can discern or navigate it. . . . And
> finally, the same is true when prison administrators thwart inmates from taking

15

> advantage of a grievance process through machination, misrepresentation, or
> intimidation.

16

*Ross v. Blake*, 578 U.S. 632, 643–44 (2016).

17

Plaintiff has not responded to Defendants' Motion for Summary Judgment. *See* Dkt.

18

However, in the verified Complaint filed in this case, Plaintiff has attached several informal

19

requests he made in March 2023 with respect to his previously-filed August 2021 Complaint No.

20

21737463. Dkt. 5 at 24–25. In the informal requests, Plaintiff asks the Resolution Specialist if he

21

"exhausted all administrative remedies" for Complaint No. 21737463, and names Defendants

22

Smith, Evans, and Whipple. *Id*. In response to the first informal request, the responder noted that

23

Plaintiff was "beyond the acceptable timeframes to file a complaint/rewrite per the [Resolution

24

Program Manual] RPM." *Id*. at 24. In response to Plaintiff's appeal to that response, the Resolution

Specialist noted,

> Please note, all Use of Force incidents are documented and go through an extensive administrative review process, which supersedes the Resolution Program. As outlined on page 9 of the RPM, issues or incidents that are being investigated or reviewed outside of the Resolution Program through another established process are deemed Not Accepted concerns. The Not Accepted determination is upheld at this time.

*Id*. at 25.

Here, even accepting Plaintiff's March 2023 attempts to determine whether he exhausted

all his administrative remedies before raising a § 1983 claim in federal court, Plaintiff has not

shown, nor raised a genuine dispute of material fact, that he properly exhausted his administrative

remedies with respect to his complaints about Defendant Officer Whipple. More specifically,

Plaintiff has not shown that he ever named Defendant Officer Whipple in any grievance filed after

the August 13, 2021, incident. Therefore, Plaintiff has not overcome Defendants' showing that

Plaintiff failed to exhaust his administrative remedies with respect to Defendant Officer Whipple

prior to filing suit in this Court.

Because Plaintiff failed to properly exhaust his administrative remedies as to the claims

against Defendant Officer Whipple alleged in the Complaint, and Plaintiff does not assert any

applicable exception to the exhaustion requirement, the Court recommends that Defendants'

Motion for Summary Judgment (Dkt. 20) be **GRANTED** as to the claims against Defendant

Officer Whipple.[7]

---

[7] The Court notes that failure to exhaust administrative remedies generally results in dismissal without prejudice. *See Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003). However, when a plaintiff has already had the opportunity to exhaust and cannot now exhaust his administrative remedies, dismissal without prejudice serves no purpose. A dismissal without prejudice would simply allow such a plaintiff to repeatedly file the same action. The logical remedy in this context is dismissal with prejudice. *See, e.g.*, *Woodford v. Ngo*, 548 U.S. 81 (2006) (exhaustion must be done in a timely manner, consistent with prison policies). Here, Plaintiff has been released from custody, and

**B.    Excessive Force Claim – Defendants Sergeant Smith and Officer Evans**

Plaintiff contends both Defendants Sergeant Smith and Officer Evans used excessive force against him during the August 13, 2021, incident in the Sergeant's office. Dkt. 5.

"When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). However, "[f]orce does not amount to a constitutional violation in this respect if it is applied in a good faith effort to restore discipline and order and not 'maliciously and sadistically for the very purpose of causing harm.'" *Id.* (quoting *Whitley v. Albers,* 475 U.S. 312, 320–321 (1986)); *see also Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010) (to prevail on an excessive force claim, a plaintiff must allege "not only that the assault actually occurred but also that it was carried out maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline").

Courts considering a prisoner's Eighth Amendment claim, "must ask both [whether] 'the officials act[ed] with a sufficiently culpable state of mind' and [whether] the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). In this inquiry, courts consider the following five factors: (1) the extent of the injury suffered by the inmate; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Id*. at 7. The appropriateness of the use of force is determined by the particular facts and circumstances of each case. *See Michenfleder v. Summer*, 860 F.2d 328, 336 (9th Cir. 1988).

---

therefore, he is unable to cure his failure to exhaust. Thus, the Court recommends dismissal of Plaintiff's claims against Defendant Officer Whipple with prejudice.

"This is not an easy test for [p]laintiffs to satisfy," as the Eighth Amendment does not give federal courts license to enact broad prison reform, nor does it generally permit federal interference with prison administration. *Hallett v. Morgan*, 296 F.3d 732, 745 (9th Cir. 2002). Because the use of force relates to prison officials' legitimate interest in maintaining security and order, the Court must be deferential when reviewing decisions regarding the use of force. *See Whitley*, 475 U.S. at 321–22.

Here, the issue central to Plaintiff's excessive use of force claims is whether Defendants exerted force in a good faith effort to maintain or restore order and discipline, or maliciously and sadistically for the very purpose of causing harm. *Hudson*, 503 U.S. at 6–7. The Court must therefore apply the *Hudson* factors to determine if there is any issue of material fact as to whether the force applied by Defendants was malicious or sadistic. To that end, Defendants maintain the force used against Plaintiff during the August 13, 2021, incident was applied in good faith to restore order and discipline while arguing Plaintiff cannot meet his burden of showing Defendants' conduct was maliciously and sadistically used to cause harm. Dkt. 20 at 12–15. The Court agrees with Defendants.

1.    <u>Extent of Plaintiff's Injury</u>

Plaintiff alleges injuries resulting from both Defendant Officer Evans' use of OC spray and Defendant Sergeant Smith's use of physical force. As to Defendant Officer Evans, Plaintiff alleges his use of OC spray caused "loss of vision, pain in my eyes, dryness in my nose/eyes area and extreme difficulty breathing, respiratory epithelium damaged and throat dryness all the time. Lower back pain, numbness and tingling in my right leg." Dkt. 5 at 5. As to Defendant Sergeant Smith, Plaintiff alleges his conduct caused "injuries to my throat, neck, and lower back pain.

Nerve damage, numbness and tingling in my right leg. Blurred vision, psychological injury resulting from this attack." *Id*. at 7.

The uncontroverted evidence demonstrates that Plaintiff was seen by medical staff in the Ad-Seg unit moments after the incident. Dkt. 23-8 at 2–3. The LPN noted Plaintiff "has a quarter bump on the right side of his head. No bleeding noted. No other injuries note[d]. Resp even and unlabored. Pt refused to open his eyes. He stated he was sprayed with OC. No acute distress noted at this time." *Id*. at 2. The LPN recommended daily wellness checks at Plaintiff's cell and vitals as needed, and otherwise cleared him for entry into the Unit. *Id*. at 2–3.

As alleged and perhaps unpleasant to be sure, Plaintiff's temporary discomfort cannot be characterized as anything more than a *de minimis* injury. *See Allen v. Bosley*, 253 F. App'x 658, 660 (9th Cir. 2007) (finding that coughing, choking, gagging, and burning eyes are merely the "transitory effects of pepper spray" and not an actual injury); *Wilkins v. Ramirez*, 455 F. Supp. 2d 1080, 1090 (S.D. Cal. 2006) (concluding that cheek abrasion, rib pain, and small cut to lower lip considered "relatively minor" in response to restraint of resisting prisoner).

To the extent Plaintiff argues that he is still suffering from the effects of the OC spray and physical force (Dkt. 5 at 5, 7), his argument is rejected. Plaintiff has failed to produce any evidence establishing that his alleged ongoing injuries are the result of Defendant Officer Evans' use of OC spray or Defendant Sergeant Smith's use of physical force. The medical records negate a causal connection between Plaintiff's alleged injuries and the use of OC spray and physical force. The undisputed facts show that the first *Hudson* factor weighs against a finding of excessive force; however, the extent of Plaintiff's injuries is not dispositive. *See Hudson*, 503 U.S. at 7 ("The absence of serious injury is [ ] relevant to the Eighth Amendment inquiry, but does not end it.").

1      2.      <u>Need for Application of Force</u>

2      Although correctional officers may never use excessive force, they may use some

3  measure of force when an inmate refuses a valid order or violates a prison rule. *Whitley*, 475 U.S.

4  at 320; *LeMarie v. Maass*, 12 F.3d 1444, 1453–54 (9th Cir. 1993). Consistent with this rule, the

5  evidence shows Defendants engaged in use of force only after Plaintiff refused to comply with

6  numerous orders. Dkt. 25 ¶¶ 8–10.

7      Plaintiff alleges that there was no need for force because he was not acting aggressively

8  towards either Defendant, but rather was merely trying to leave the Sergeant's office to "defus[e]

9  the situation." Dkt. 5 at 5, 7. However, Defendants' submitted evidence establishes Plaintiff

10  disregarded and disobeyed numerous orders to sit down, calm down, stop moving towards

11  Officer Whipple, and face the wall to be cuffed up. Dkt. 25 ¶¶ 8–10. By refusing to obey these

12  orders, Plaintiff posed a potential threat to officer and prison security by being disruptive.

13      The Supreme Court has accorded prison officials "wide-ranging deference in the

14  adoption and execution of policies and practices that in their judgment are needed to preserve

15  internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520,

16  547 (1979); *Whitley*, 475 U.S. at 321 (extending *Bell* to prison security measures). Prisoners do

17  not enjoy the right to give counter demands to an officers' lawful orders. *See, e.g.*, *Soto v.

18  Dickey*, 744 F.2d 1260, 1267 (7 Cir. 1984) ("Orders given must be obeyed. Inmates cannot be

19  permitted to decide which orders they will obey, and when they will obey them."). "When an

20  order is given to an inmate there are only so many choices available to the correctional officer. If

21  it is an order that requires action by the institution, and the inmate cannot be persuaded to obey

22  the order, some means must be used to compel compliance, such as chemical agent or physical

23  force." *Soto*, 744 F.2d at 1267.

24

Here, Plaintiff's refusal to comply with orders to calm down and face the wall to be "cuffed up" presented a threat to the safety and security of the prison. Thus, the Court finds Defendants were authorized to use some measure of force in the face of Plaintiff's noncompliance. *See LeMarie*, 12 F.3d at 1453–54 (collecting cases upholding the use of tasers and other non-deadly force on disruptive, unruly, or recalcitrant prisoners to restore order, discipline, and safety).

Accordingly, this second *Hudson* factor weighs against a finding of excessive force by Defendants.

3.   Relationship Between the Need for Force and the Amount of Force Used in Gaining Compliance

Plaintiff alleges that Defendant Officer Evans' discharge of OC spray and Defendant Sergeant Smith's use of physical force constituted excessive force because neither was applied to restore order, but rather was done "for the sole purpose of infliction of pain." Dkt. 5 at 5, 7. Defendants counter that the evidence of Defendant Officer Evans' interaction with Plaintiff and the evidence of the other officers' efforts to subdue Plaintiff, including those of Defendant Sergeant Smith, demonstrate a "swift and effective response to [Plaintiff's] non-compliant behavior." Dkt. 20 at 14. Defendants also argue they used just enough force to subdue Plaintiff without injuring him in the process. *Id*. at 14–15. The Court agrees.

Defendants submit evidence that, when Defendant Officer Evans heard Defendant Sergeant Smith yell out after Plaintiff grabbed and squeezed his testicles, Evans was concerned for Smith's safety and feared Plaintiff was injuring him. Dkt. 25 ¶ 3. It was at that time that Defendant Officer Evans called for a spontaneous use of force, retrieved his OC spray and sprayed it towards Plaintiff. *Id*. Photographic evidence shows the OC spray hit the frame of the office door. Dkts. 23-5, 23-6, 23-7.

REPORT AND RECOMMENDATION - 18

1    Further, Defendants' evidence shows the struggle did not end there.[8] Plaintiff continued

2    to resist, Response and Movement Officers arrived on the scene to assist, and Defendant

3    Sergeant Smith tried to subdue Plaintiff while Defendant Officer Evans executed a leg trip

4    maneuver. Dkt. 25 ¶ 12. Defendant Sergeant Smith was injured in the process. *Id*.; Dkt. 23-1 at 2.

5    Once the officers were able to subdue Plaintiff and removed him to Ad-Seg, he was examined

6    there by an LPN who noted minimal injuries and "[n]o acute distress." Dkt. 23-1 at 2; Dkt. 23-8

7    at 3.

8    Upon careful review, the Court finds there is no evidence that the amount of force used

9    by Defendants was somehow disproportionate to the Defendants' need to use force to gain

10   Plaintiff's compliance. Nor is there any evidence that Defendants acted maliciously or

11   sadistically for the purpose of causing harm to Plaintiff. More specifically, Defendant Officer

12   Evans used the OC spray in response to what he perceived as an urgent need when he heard

13   Defendant Sergeant Smith yell out in pain, and there is no evidence to suggest that the use of the

14   OC spray was excessive. *See Clement*, 298 F.3d at 903–04 (evidence that prison official

15   administered second pepper spray even after coughing and gagging was heard from cell does not

16   lead to the inference that the official used the pepper spray maliciously and sadistically for the

17   very purpose of causing harm). And, as the evidence shows Plaintiff refused to face the wall to

18   be handcuffed and instead attempted to exit the office while physically resisting Defendant

19   Sergeant Smith's efforts to restore order, the Court cannot find that Smith's use of force on

20   Plaintiff was malicious or sadistic. *See Whitley*, 475 U.S. at 320–21 (excessive force inquiry

21   "ultimately turns on whether force was applied in a good faith effort to maintain or restore

22

23   ---

[8] Plaintiff asserts that, at this point, he was able to open the office door but Defendant Sergeant Smith grabbed him from behind and choked him. Dkt. 23-11 at 5. However, he also asserts that when he screamed out that he could not breathe, Smith let go and they tumbled out of the office, with both falling to the floor. *Id*.

24

1    discipline or maliciously and sadistically for the very purpose of causing harm" (citation and

2    internal quotation marks omitted)).

3        In sum, the undisputed facts demonstrate that the third *Hudson* factor weighs against a

4    finding of excessive force.

5        4.    <u>Threat Reasonably Perceived by Defendants</u>

6        Here, the Court looks to any threat to the safety of staff and others around Plaintiff that

7    was reasonably perceived by Defendants Sergeant Smith and Officer Evans before the use of

8    force. On this point, Defendants submit evidence that Plaintiff acted aggressively towards

9    Defendant Officer Evans when he confronted Plaintiff about the placement of his mask, and

10   continued that disruptive behavior once inside of Defendant Sergeant Smith's office. *See* Dkt. 25

11   ¶¶ 8–9. Because of Plaintiff's behavior in the office, in particular his refusal to physically calm

12   down in the small space, Defendant Sergeant Smith radioed in for assistance with an out-of-

13   control offender. *Id*. at ¶ 9. Defendants submit evidence that, once that call was made, Plaintiff

14   grabbed the office door handle and, when he refused an order to let go, Defendant Sergeant

15   Smith struck Plaintiff on the head in order to get him to comply with the order. *Id*. at ¶¶ 7, 11;

16   Dkt. 23-1 at 2. At that point, with his free hand Plaintiff grabbed and squeezed Defendant

17   Sergeant Smith's testicles, causing the Sergeant to yell out. Dkt. 25 ¶ 11; Dkt. 23-1 at 2. When

18   Defendant Officer Evans heard the Sergeant yell out, he immediately perceived a threat to the

19   safety of Defendant Sergeant Smith and himself, radioed in that he was engaging in a

20   spontaneous use of force, and discharged his OC spray in the direction of Plaintiff. Dkt. 25 ¶ 3.

21   When the struggle continued and eventually spilled out into the foyer, other officers arrived to

22   assist in subduing Plaintiff. *Id*. at ¶ 3, 12.

23

24

1    Because Plaintiff was still resisting, flailing his arms and kicking his legs in the process,

2    Defendants reasonably perceived Plaintiff as a threat to the safety and security of the prison.

3    Therefore, the undisputed facts demonstrate that the fourth *Hudson* factor weighs against a

4    finding of excessive force.

5         5.    Efforts Made to Temper the Severity of a Forceful Response

6         In considering this final factor, the Court must look to whether any steps were taken to

7    temper the severity of force. The evidence shows that, prior to the use of force by Defendants,

8    Defendant Sergeant Smith verbally asked Plaintiff to calm down several times in the office after

9    Plaintiff clearly showed he was agitated. Dkt. 25 ¶ 9. When Plaintiff did not comply and instead

10    moved towards Officer Whipple at the office door, Defendant Sergeant Smith asked Plaintiff to

11    stop moving in that direction. *Id*. at ¶ 10. Despite these efforts, the verbal commands were

12    unsuccessful in gaining Plaintiff's compliance.[9] Instead, Defendant Officer Evans perceived a

13    threat to Sergeant Smith and himself, called in a spontaneous use of force, and deployed the OC

14    spray. Dkt. 25 ¶ 3. Defendants and other officers subsequently used various techniques such as a

15    "leg trip" maneuver, a "gooseneck hold," and a "cross leg" maneuver to gain control of Plaintiff

16    without further escalating the situation. *See* Dkt. 25 ¶ 12; Dkt. 26 ¶ 5; Dkt. 27 ¶ 5; Dkt. 28 ¶ 8.

17    Defendants argue that they used just enough force to subdue Plaintiff without injuring him in the

18    process. Dkt. 20 at 15.

19

20

---

21    [9] To the extent that Plaintiff alleges Defendant Sergeant Smith's use of obscenities when speaking to him in the
office prior to any use of force also violated his constitutional rights (*see* Dkt. 23-11 at 5), it is well established that

22    allegations of verbal harassment or abuse alone do not state a constitutional deprivation under § 1983. *See Freeman
v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–

23    85 (9th Cir. 2008) (prison officials' abusive language towards Muslim inmates insufficient to establish equal
protection violation). Disrespectful, and even assaultive, comments by prison guards are insufficient to implicate the

24    Eighth Amendment. *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996); *see also Oltarzewski v. Ruggiero*, 830 F.2d
136, 139 (9th Cir. 1987) (use of vulgar language does not violate a constitutional right).

1    After the use of force, Plaintiff was immediately treated by medical staff. *See* Dkt. 23-8 at

2    2–3. The treating LPN noted Plaintiff "has a quarter bump on the right side of his head. No

3    bleeding noted. No other injuries note[d]. Resp even and unlabored. Pt refused to open his eyes.

4    He stated he was sprayed with OC. No acute distress noted at this time." *Id*. at 2. Further,

5    although the LPN recommended daily wellness checks at Plaintiff's cell and vitals as needed, *id*.

6    at 2–3, the record is devoid of any showing that Plaintiff sought additional treatment.

7    The evidence demonstrates that Defendants made efforts to avoid the need to use force to

8    discipline Plaintiff, namely with the use of de-escalation techniques such as verbal commands to

9    calm Plaintiff. But once they decided to use force, Defendants made sure to utilize techniques

10    and physical maneuvers designed to avoid serious injury, and to temper the severity of the force

11    used by quickly providing medical treatment to Plaintiff. Therefore, the undisputed facts

12    demonstrate that the fifth *Hudson* factor weighs against a finding of excessive force.

13    Accordingly, after construing the evidence in the record in the light most favorable to

14    Plaintiff, and considering the *Hudson* factors, the Court finds that Defendants did not use

15    excessive force in violation of the Eighth Amendment when they deployed OC spray and utilized

16    physical force against Plaintiff to gain his compliance with lawful orders, that allegedly resulted

17    in harm to Plaintiff. As a result, the Court recommends Defendants' Motion for Summary

18    Judgment (Dkt. 20) as to these claims against Defendants Officer Evans and Sergeant Smith be

19    **GRANTED**.

20    **C.    Qualified Immunity**

21    Defendants also argue that, even if there had been a constitutional violation, they are

22    protected by qualified immunity. However, the Court has already made a recommendation to

23

24

REPORT AND RECOMMENDATION - 22

dismiss Plaintiff's case on the merits. Therefore, the Court declines to make a determination as to qualified immunity.

## IV.    CONCLUSION

For the reasons discussed above, the Court recommends that Defendants' Motion for Summary Judgment (Dkt. 20) be **GRANTED** and summary judgment be **ENTERED** in favor of all Defendants.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on October 2, 2024, as noted in the caption.

Dated this 18th day of September, 2024.

Grady J. Leupold
United States Magistrate Judge